# EXHIBIT

# 1

Case 8:25-cv-00066-FWS-JDE   Document 1-1   Filed 01/15/25   Page 2 of 19   Page ID #:12

Electronically Filed by Superior Court of California, County of Orange, 12/11/2024 09:49:06 AM.
30-2024-01446256-CU-WT-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By K. Climer, Deputy Clerk.

| | |
|---|---|
| 1 | ZACK I. DOMB, SBN 265185<br>E-Mail zack@dombrauchwerger.com |
| 2 | DEVIN E. RAUCHWERGER, SBN 274234<br>E-Mail devin@dombrauchwerger.com |
| 3 | **DOMB & RAUCHWERGER LLP**<br>1055 East Colorado Blvd., Fifth Floor |
| 4 | Pasadena, California 91106<br>Telephone: (213) 537-9225 |
| 5 | |
| 6 | Attorneys for Plaintiff<br>Mike Tully |
| 7 | |

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

| | | |
|---|---|---|
| MIKE TULLY, | | CASE NO.: 30-2024-01446256-CU-WT-CJC<br>*[Unlimited Jurisdiction]* |
| | Plaintiff, | **PLAINTIFF MIKE TULLY'S COMPLAINT FOR DAMAGES FOR:** |
| v. | | |
| TESLA, INC. DBA TESLA MOTORS, INC., A Texas Corporation; and DOES 1 THROUGH 100, inclusive, | | 1. PROMISSORY ESTOPPEL<br>2. BREACH OF ORAL CONTRACT<br>3. DISABILITY DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA")<br>4. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA<br>5. FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF FEHA<br>6. RETALIATION IN VIOLATION OF FEHA<br>7. FAILURE TO PREVENT DISCRIMINATION AND RETALIATION IN VIOLATION OF FEHA<br>8. RETALIATION IN VIOLATION OF LABOR CODE SECTION 1102.5<br>9. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY |
| | Defendants. | |
| | | **DEMAND FOR JURY TRIAL** |
| | | Assigned for All Purposes<br>Judge Andre De La Cruz |

1

PLAINTIFF MIKE TULLY'S COMPLAINT FOR DAMAGES

Plaintiff Mike Tully ("Plaintiff") alleges as follows on knowledge as to himself and his own acts/interactions, and on information and belief as to all other matters:

## PARTIES

1. Plaintiff, at all times relevant herein, is a resident of the State of California and County of Orange.

2. Plaintiff is informed and believes that Defendant Tesla, Inc. dba Tesla Motors, Inc. (hereinafter "Defendant" or "Tesla") is, and was, a Texas corporation, authorized to transact, and transacting, business in the State of California and County of Orange. Plaintiff is informed and believes, and thereon alleges that, at all relevant times herein, Defendant had its headquarters and principal place of business at 1 Tesla Road, Austin, State of Texas, 78725. Plaintiff is informed and believed, and thereon alleges that, at all times relevant herein, Defendant employed more than five (5) employees for each working day during each of twenty (20) or more calendar weeks in each relevant calendar year. Plaintiff is informed and believes that Defendant is subject to the law and regulations of California, including the Labor Code and the Fair Employment and Housing Act.

3. The true names and capacities of the Defendants named herein as Does 1 through 100, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff who therefore sues such Defendants by fictitious names pursuant to California Code of Civil Procedure section 474. Plaintiff is informed and believes that all of the Doe Defendants are California residents. Plaintiff will amend this Complaint to show such true names and capacities when they have been determined.

4. Plaintiff is informed and believes that at all times relevant herein, each Defendant designated, including Does 1 through 100, was the agent, managing agent, principal, owner, partner, joint venturer, representative, manager, servant, employee and/or co-conspirator of each of the other Defendants, and was at all times mentioned herein acting within the course and scope of said agency and employment, and that all acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization and consent of each Defendant designated herein.

**JURISDICTION & VENUE**

5. This Court has personal jurisdiction over each of the Defendants because they are residents of and/or doing business in the State of California.

6. Under California Code of Civil Procedure section 395(a), venue is proper in this county because the Defendants, or some of them, reside in Orange County; and/or the injury (adverse actions suffered by Plaintiff) occurred in Orange County.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7. Plaintiff exhausted his administrative remedies by timely filing a complaint for the issues raised herein against the appropriate parties herein with the California Civil Rights Department ("CCRD") and thereafter received a "Right to Sue" letter from the CCRD, which allowed Plaintiff one year from December 11, 2024 to file this action.

**FACTUAL ALLEGATIONS**

8. Defendant Tesla, Inc. d/b/a Tesla Motors, Inc. ("Tesla") is a multinational automotive and clean energy company headquartered in Austin, Texas. Tesla designs, manufactures, and sells battery electric vehicles, stationary battery energy storage devices, solar panels and solar shingles, and related products and services.

9. Plaintiff was hired by Tesla in March 2022 as a Senior Compliance and Operational Risk Specialist (akin to a senior paralegal role), with a start date of April 11, 2022. He reported to Charles Lee, Associate General Counsel (AGC). His job duties included providing legal support services to the AGC and the Board and ensuring compliance at the state level during the integration of three insurance companies acquired from Bank of America (BofA), and then expanding the operations of the acquired companies throughout the United States. He also provided legal and compliance support for international audits. At the time of the acquisition by Tesla, he was working for the insurance companies on behalf of BofA where he had been for 16 years, and as part of the asset purchase of the insurance companies was offered a role with Tesla. Although he was hired out of the Fremont, California Tesla corporate office, he lives in Irvine, California and only accepted the position after being promised and assured that the position would be remote, and he would not be required to relocate. He, Mr. Lee, and senior leadership

3
PLAINTIFF MIKE TULLY'S COMPLAINT FOR DAMAGES

with Tesla discussed that part of the "deal" for him to leave BofA was the promise that his role would remain remote. He made it patently clear to everyone at Tesla that remaining in Irvine was not negotiable, and he was assured the position would remain remote. On this premise, he agreed to leave his career with BofA and join Tesla. During his tenure with Tesla, Mr. Tully had excellent performance reviews and no disciplinary actions or performance issues.

10. Subsequently, Tesla breached their promise that Plaintiff relied on to his detriment when he left his employment at BofA and announced that Plaintiff would have to work in-person and relocate hundreds of miles, to either their Fremont facility or their Texas facility. Plaintiff began to discuss alternative options with Tesla however this breached promise exacerbated Plaintiff's disability and only after he advised the company of his medical condition, did Tesla terminate Plaintiff.

**AFTER BEING LURED AWAY FROM BANK OF AMERICA WITH PROMISES BY SENIOR LEADERSHIP THAT HIS POSITION WOULD REMAIN REMOTE, PLAINTIFF WAS INFORMED OF A RETURN-TO-WORK MANDATE TWO MONTHS INTO HIS EMPLOYMENT NECESSITATING THAT HE RELOCATE HUNDREDS OF MILES**

11. Two months into his employment with Tesla, he was informed that his position was no longer permitted to be remote, and he was required under a return-to-office mandate to relocate to a Tesla-approved "Finance site," which was either the Fremont office or a Texas location. He was informed that if he failed to relocate, he would be terminated. He immediately reached out to Mr. Lee reiterating the promises that were made prior to his joining Tesla, and explained again that relocation was not feasible as his family owned a business in Irvine that was managed by his wife and his children attended college locally. He informed Mr. Lee that he would evaluate his options and try to work out a plan with his family, but he made it clear from the outset that relocation was unlikely. He felt completely blindsided and misled by Tesla and its leadership team when they convinced him to leave his position with BofA with the promise that his role would remain remote, which he relied on to his detriment.

12. Initially, Plaintiff was not provided with a deadline within which he was expected

4
PLAINTIFF MIKE TULLY'S COMPLAINT FOR DAMAGES

to relocate. At some point over the next few months, he was informed that the expectation was he would relocate by December 2022. He again made it clear to Mr. Lee that it was not likely he would be able to relocate to Fremont, considering the upheaval it would cause to his family and the increased cost of living that made it financially untenable. He would essentially be taking a pay cut to move to the San Francisco Bay Area to do the same job while more than likely having to sustain two households to keep his family in Irvine while he commuted weekly to Fremont.

## THE STRESS CAUSED BY TESLA'S BREACH OF THEIR PROMISE EXACERBATED PLAINTIFF'S DISABILITY

13. Plaintiff suffers from Crohn's and Irritable Bowel Disease (IBD), which are triggered by stress among other factors. When he experiences flareups, it causes inflammation and intestinal blockage that results in septic attacks and toxic buildup in his system causing vomiting and severe abdominal pain. He can be bedridden for days at a time, and it can take weeks for his body to bounce back during which time he typically loses a significant amount of weight. His disabilities do not affect his ability to do his job on a day to day basis, and while with BofA he experienced maybe one mild flareup a year. During a team meeting a couple of months prior to his termination, Mr. Lee announced that he was "challenging" everyone on the team to commit to losing weight. Plaintiff mentioned to Mr. Lee that he would not be able to participate in the wellness challenge because he suffered from chronic medical conditions that affected his weight and his diet.

14. During this time after Tesla breached the promise that Plaintiff's position would be remote, as he explored his options, Plaintiff became aware that there were other employees in the department subject to the return-to-work mandate that were provided exceptions to having to move to Fremont or Texas and were permitted to work in other office locations, including in southern California. Plaintiff discussed with Mr. Lee the possibility that he work out of the nearby office, as did others in the department who had relocated away from the Bay Area during COVID and were now also subject to the return-to-office mandate, as a compromise. Without explanation, he was told this was not an option and he would have to move hundreds of miles away.

15. Plaintiff's family did not support the relocation, and his wife threatened him with divorce if he did so. Not surprisingly, the months following the relocation mandate were extremely stressful for Plaintiff as he risked losing his family or losing his job that he had just started after leaving behind a career at BofA based on Tesla's promise that he could work remotely. The extreme stress he was under caused Plaintiff to start suffering severe flareups of his disability. As a result of the extreme pain he was suffering, Plaintiff advised Defendant that he was suffering from a chronic medical condition that was being exacerbated by the stress he was experiencing, and as a result, once again asked if he could continue working remotely, as he was promised, or if he could work in a nearby location so he would not be forced to move, but this time as an accommodation to minimize the stress and exacerbation of his disability. Unfortunately, this request for an accommodation was flatly and summarily denied.

## PLAINTIFF WAS TERMINATED AFTER HE INFORMED HUMAN RESOURCES OF HIS DISABILITIES AND REQUESTED AN ACCOMMODATION OF EXPLORING OPTIONS OTHER THAN RELOCATION AS HAD BEEN AFFORDED OTHERS IN THE DEPARTMENT

16. By December, Plaintiff had still not come up with a resolution to the issue of relocating to an office in Fremont or Texas. His wife made it clear that she refused to move, and it was not financially feasible to commute to a location 400 miles away, yet Mr. Lee was being inflexible with options and would not discuss alternatives with Plaintiff. On December 14, 2022, Plaintiff contacted Brandon Ward, Senior HR Partner, to discuss the relocation mandate and his personal situation, and let him know about his disabilities and the fact that the stress placed on him under the relocation mandate had exacerbated his medical condition. He requested an accommodation of allowing him to remain with the company while residing in Irvine, which would minimize his stress and ease the exacerbated symptoms of his medical condition. They discussed various options, such as a nearby office or moving Plaintiff to another division within the company that was within an easier commute distance. Mr. Ward stated he understood the concern, and he would get back to him.

17. On December 15, the day after his conversation with Mr. Lee, Plaintiff was

summarily terminated. At noon, he was invited to a video conference call with Mr. Ward and Mr. Lee who stated they could not work out the "logistics" to allow him to remain in Irvine and therefore, since he had failed to relocate, he was terminated.

18. In summation, Tesla made a clear and unambiguous promise to Plaintiff that his position would be remote, which Plaintiff relied upon to his detriment when he resigned from his position at BofA to come to Tesla based on that promise. However, Tesla subsequently breached that promise and told Plaintiff that to keep his job, he would have to relocate hundreds of miles away. The stress caused by this breached promise exacerbated Plaintiff's disability, of which Tesla was aware, and after he asked for a reasonable accommodation so his condition would not be exacerbated, Tesla terminated Plaintiff's employment as a result.

## FIRST CAUSE OF ACTION
## PROMISSORY ESTOPPEL
## (AGAINST DEFENDANT)

19. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

20. Defendant made a clear and unambiguous promise to Plaintiff that his job at Tesla will be a remote position. This promise was made to Plaintiff after Plaintiff expressly communicated to Defendant that he would not leave his employment at BofA without assurances that his position at Tesla would be remote.

21. Plaintiff relied on Defendant's clear and unambiguous promise when he resigned from his 16 year career at BofA to start a remote position at Tesla. This ended up being to Plaintiff's detriment because Defendant subsequently breached its promise and told Plaintiff he would no longer be allowed to work remotely.

22. As a result, Defendant suffered damages, including physical injury, because the stress caused by Defendant's breach exacerbated Plaintiff's medical condition and caused his severe pain.

23. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as described above, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits, and other compensatory damages in an

amount to be ascertained at the time of trial.

24. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has suffered and will continue to suffer physical injury, emotional, and mental injuries to Plaintiff's in an amount to be ascertained at the time of trial.

25. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has and will necessarily expend sums for the treatment of the physical injury, emotional, and mental injuries sustained by Plaintiff as a result of said Defendant's acts in an amount to be ascertained at the time of trial.

## SECOND CAUSE OF ACTION

## BREACH OF ORAL CONTRACT

## (AGAINST DEFENDANT)

26. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

27. Plaintiff and Defendant entered into a contract with one another. Specifically, Defendant offered Plaintiff a remote employment position (and assured him that the position would be remote and he would not have to work at Tesla facility) in exchange for Defendant leaving his then-current employer, BofA, with whom he had worked for 16 years. Plaintiff accepted this offer based on Defendant's offer, which included a caveat that his position with Defendant would be remote.

28. Plaintiff did all, or substantially all, of the things that the contract required him to do. Plaintiff resigned from his career employment at BofA in order to accept Defendant's offer for remote employment.

29. Shortly after he began his remote position with Defendant, Defendant breached their contract and advised Plaintiff his position would no longer be remote and that he would have to report to a Tesla facility either in Fremont, California or in Texas, both of which were hundreds of miles from where Plaintiff lived.

30. As a result of Defendant's breach, Defendant suffered damages, including physical injury, because the stress caused by Defendant's breach exacerbated Plaintiff's medical

condition and caused his severe pain.

31. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as described above, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

32. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has suffered and will continue to suffer physical injury, emotional, and mental injuries to Plaintiff's in an amount to be ascertained at the time of trial.

33. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has and will necessarily expend sums for the treatment of the physical injury, emotional, and mental injuries sustained by Plaintiff as a result of said Defendant's acts in an amount to be ascertained at the time of trial.

## THIRD CAUSE OF ACTION

## DISABILITY DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA")

### (AGAINST DEFENDANT)

34. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

35. Pursuant to the Fair Employment and Housing Act ("FEHA"), it is an unlawful employment practice for an employer, because of an employee's disability, to discharge the person from employment or to discriminate against the person in compensation or in terms, conditions, or privileges of employment. Plaintiff was discriminated against in the terms and conditions of his employment when he was terminated by Defendant because of his disability and because he requested accommodation for his disability. By taking these adverse employment actions against Plaintiff due to his disability, Defendant violated the FEHA and the corresponding regulations.

36. As a result of the extreme pain he was suffering caused by Defendant's return to work mandate and the corresponding stress on Plaintiff and his family, Plaintiff advised

Defendant that he was suffering from a chronic medical condition that was being exacerbated by the stress he was experiencing, and as a result, once again asked if he could continue working remotely, as he was promised, or if he could work in a nearby location so he would not be forced to move, but this time as an accommodation to minimize the stress and exacerbation of his disability. Unfortunately, this request for an accommodation was flatly and summarily denied and as a result of his disability and requesting an accommodation, Defendant terminated Plaintiff.

37. As a proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as described above, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

38. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has suffered and will continue to suffer physical, emotional and mental injuries to Plaintiff's in an amount to be ascertained at the time of trial.

39. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has and will necessarily expend sums for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendant's acts in an amount to be ascertained at the time of trial.

40. The above-described acts of Defendant(s) and DOES 1 through 100, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter others from engaging in similar conduct.

### FOURTH CAUSE OF ACTION
### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA
### (AGAINST DEFENDANT)

41. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

42. Government Code section 12940(n) provides that it is an unlawful employment

practice "[f]or an employer...to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." This statute requires employers to engage in a timely, good faith interactive process to accommodate known disabled employees.

43. Defendant failed in their duty to engage in a timely, good faith interactive process with Plaintiff to accommodate his known disability. Instead, Defendant terminated Plaintiff's employment in part because of his disability. Plaintiff believes, and on that basis alleges, that his disability was a motivating factor in Defendant's termination of his employment.

44. As a proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as described above, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

45. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has suffered and will continue to suffer physical, emotional and mental injuries to Plaintiff's damage in an amount to be ascertained at the time of trial.

46. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has and will necessarily expend sums for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in an amount to be ascertained at the time of trial.

47. The above-described acts of Defendant(s) and DOES 1 through 100, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter others from engaging in similar conduct.

//

//

//

## FIFTH CAUSE OF ACTION

## FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF FEHA

### (AGAINST DEFENDANT)

48. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

49. Government Code section 12940(m) provides that it is an unlawful employment practice "[f]or an employer…to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."

50. Defendant was aware that Plaintiff had a medical condition which Plaintiff requested a reasonable accommodation for and was denied. Plaintiff requested to continue working remotely, as he was promised, or if he could work in a nearby location so he would not be forced to move, as an accommodation to minimize the stress and exacerbation of his disability. Rather than engage in discussion around his disabilities and request for accommodation, he was terminated. Defendant wholly failed in their duty to attempt a reasonable accommodation of Plaintiff's known disabilities. Defendant used Plaintiff's disability and his need for reasonable accommodation as an excuse for terminating Plaintiff's employment.

51. Plaintiff believes, and on that basis alleges, that his disability and the need to accommodate his disability were substantial motivating factors in Defendant's termination of his employment.

52. As a proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as described above, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

53. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has suffered and will continue to suffer physical, emotional and mental injuries to Plaintiff's damage in an amount to be ascertained at the time of trial.

54. As a further proximate result of the acts of Defendant(s) and DOES 1 through

100, and each of them, as alleged above, Plaintiff has and will necessarily expend sums for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in an amount to be ascertained at the time of trial.

55. The above-described acts of Defendant(s) and DOES 1 through 100, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter others from engaging in similar conduct.

## SIXTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF FEHA

## (AGAINST DEFENDANT)

56. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

57. Pursuant to Government Code section 12940(h), it is an unlawful employment practice for an employer or person to retaliate against any person because the person has opposed any practices forbidden under California's Fair Employment and Housing Act ("FEHA") or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

58. Plaintiff was discharged from his employment at Defendant because he engaged in the protected activity of making requests for reasonable accommodations for his known disability. By making such requests for reasonable accommodations, Plaintiff engaged in a legally protected activity and held a reasonable belief that Defendant failure to accommodate or engage in the interactive process violated FEHA. [Gov. Code § 12940(h); Cal. Code Regs. Tit. 2, § 11021]. Accordingly, Defendants, and each of them, terminated Plaintiff's employment in retaliation for Plaintiff exercising his rights under FEHA.

59. As a proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as described above, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

60. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has suffered and will continue to suffer

1 physical, emotional and mental injuries to Plaintiff's damage in an amount to be ascertained at
2 the time of trial.

3     61. As a further proximate result of the acts of Defendant(s) and DOES 1 through
4 100, and each of them, as alleged above, Plaintiff has and will necessarily expend sums for the
5 treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said
6 Defendants' acts in an amount to be ascertained at the time of trial.

7     62. The above-described acts of Defendant(s) and DOES 1 through 100, and each of
8 them, were willful, intentional and malicious and done with the intent to vex, injure and annoy
9 Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient
10 to punish said Defendants and to deter others from engaging in similar conduct.

## SEVENTH CAUSE OF ACTION

## FAILURE TO PREVENT DISCRIMINATION AND RETALIATION IN VIOLATION OF FEHA

### (AGAINST DEFENDANT)

15     63. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

16     64. Government Code section 12940(k) provides that it is an unlawful employment
17 practice "[f]or an employer...to fail to take all reasonable steps necessary to prevent
18 discrimination and harassment from occurring." An employer can also be liable for failure to
19 take all reasonable steps necessary to prevent retaliation. (*CACI 2527.*) Such steps include
20 training, adopting an anti-harassment, anti-discrimination, and anti-retaliation policy, and
21 implementing and enforcing those policies.

22     65. As detailed above, Plaintiff was subjected to unlawful discrimination and
23 retaliation in the course of his employment, from his supervisors who he had to interact with in
24 fulfilling his job duties. Defendant failed to take all reasonable steps to prevent and remedy the
25 unlawful discrimination and retaliation from occurring.

26     66. Defendant's failure to take all reasonable steps to prevent the unlawful
27 discrimination and retaliation harmed Plaintiff and was a substantial factor in causing Plaintiff's
28 harm.

67. In engaging in the aforementioned conduct, Defendants, and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the FEHA, the Labor Code, and the announced policy of this State against such practices.

68. As a proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as described above, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

69. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has suffered and will continue to suffer physical, emotional and mental injuries to Plaintiff's damage in an amount to be ascertained at the time of trial.

70. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has and will necessarily expend sums for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in an amount to be ascertained at the time of trial.

71. The above-described acts of Defendant(s) and DOES 1 through 100, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter others from engaging in similar conduct.

## EIGHTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF LABOR CODE SECTION 1102.5

### (AGAINST DEFENDANT)

72. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

73. California Labor Code section 1102.5(b) mandates: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

PLAINTIFF MIKE TULLY'S COMPLAINT FOR DAMAGES

74. Defendant terminated Plaintiff's employment and took the other adverse actions against Plaintiff alleged herein, at least in substantial part, in retaliation for Plaintiff requesting a reasonable accommodation for his disability and because of his disability, as well as for Plaintiff opposing Defendant's failure to accommodate, promissory estoppel, and breach of oral contract.

75. As a proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as described above, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

76. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has suffered and will continue to suffer physical, emotional and mental injuries to Plaintiff's damage in an amount to be ascertained at the time of trial.

77. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has and will necessarily expend sums for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in an amount to be ascertained at the time of trial.

78. The above-described acts of Defendant(s) and DOES 1 through 100, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter others from engaging in similar conduct.

## NINTH CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

## (AGAINST DEFENDANT)

79. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

80. Defendant's act of terminating Plaintiff's employment due to his disability, and engaging in protected activities as described above, was against the public policy of the State of California as evidenced by the enactment of FEHA and Labor Code section 1102.5.

81. The above-described conduct by Defendants, and each of them, was against the

public policy of the State of California.

82. In engaging in the aforementioned conduct, Defendants, and each of them, aided, abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the FEHA and the announced policy of this State against such practices.

83. As a proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as described above, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

84. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has suffered and will continue to suffer physical, emotional and mental injuries to Plaintiff's damage in an amount to be ascertained at the time of trial.

85. As a further proximate result of the acts of Defendant(s) and DOES 1 through 100, and each of them, as alleged above, Plaintiff has and will necessarily expend sums for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants' acts in an amount to be ascertained at the time of trial.

86. The above-described acts of Defendant(s) and DOES 1 through 100, and each of them, were willful, intentional and malicious and done with the intent to vex, injure and annoy Plaintiff and warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter others from engaging in similar conduct.

## JURY TRIAL DEMANDED

1. Plaintiff demands a jury as to all causes of action.

## PRAYER FOR RELIEF

2. Plaintiff prays judgment against Defendants as follows:

   a. For general economic and non-economic damages according to proof;

   b. For special damages according to proof;

   c. For punitive damages where allowed by law;

PLAINTIFF MIKE TULLY'S COMPLAINT FOR DAMAGES

d. For injunctive relief according to proof enjoining the unlawful, fraudulent and/or unfair practices, policies and patterns alleged herein;

e. For prejudgment interest pursuant to California Civil Code section 3287 and/or California Civil Code section 3288 and/or any other provision of law providing for prejudgment interest;

f. For attorneys' fees where allowed by law;

g. For costs of suit incurred herein;

h. For such other and further relief as this Court deems just and proper.

DATE: December 11, 2024

DOMB & RAUCHWERGER LLP

By: _____
ZACK I. DOMB
DEVIN RAUCHWERGER
Attorneys for Plaintiff
Mike Tully